# Federal Defenders
## OF NEW YORK, INC.

Southern District
81 Main Street, Suite 300
White Plains, NY 10007
Tel: (914) 428-7124 Fax: (914) 948-5109

---

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

July 14, 2025

**BY ECF AND EMAIL**

The Hon. Nelson Román
United States District Court
Southern District of New York
300 Quarropas St.
White Plains, NY 10601

    Re:   *United States v. Austin Suman,* 7:24 Cr. 700 (NSR)
            **Sentencing Submission**

Dear Judge Román,

    Austin Suman has been incarcerated since November 15, 2024. A sentence of time served (eight months), which is a slight variance from his Guidelines range of 10 to 16 months, is sufficient but not greater than necessary for three reasons. First, Mr. Suman has expressed sincere remorse for his wrongdoing and will participate in mental health treatment upon release. He will not recidivate. Second, he has been punished substantially by this conviction. He has never before served any jail or prison time. He will also be a lifelong felon precluded from owning guns. Finally, additional prison time will preclude him from receiving adequate treatment for his ongoing physical injuries related to a █████████████████████████████ █████████████████████. Over the past eight months, █████████████████████████ ██████████████████████████████████████████████████████████████████████████████.

    For these reasons, a sentence of time served (8 months), plus supervised release, will punish Mr. Suman, but also meet the rehabilitative goals set forth in 18 U.S.C. § 3553(a).

### A. Procedural Background

    Mr. Suman was arrested in South Carolina on November 15, 2024 pursuant to Federal Rule of Criminal Procedure 5(c)(3). He endured one month of inter-prison transfers and arrived in this District on December 12, 2024. He has been incarcerated at Westchester County Jail since then.

1

On April 30, Mr. Suman entered a plea to a one-count Indictment charging threatening interstate communications, in violation of 18 U.S.C. § 875(c). This charge carries a maximum term of imprisonment of 5 years and a maximum term of supervised release of 3 years. He has zero criminal history points. His Guidelines range is 10 to 16 months (offense level 12; Criminal History Category I).

B. **<u>Mr. Suman's history and characteristics augur in favor of a time served sentence.</u>**

Mr. Suman was born on June 4, 1989. He is now 36 years old. He was raised in Salsbury Mills, New York, a small town in Orange County. He was the youngest of three siblings. Mr. Suman's parents separated when he was about four years old. He has little memory of his dad being in the home. Mr. Suman believes they divorced because "my father was a bold spirit" and "sort of a loner."[1]

His mother had primary custody of Austin and his siblings, but they spent their weekends with their father. Young Austin realized that his dad was more interested in engaging with his older sister or brother. He did not really think much of the disparate treatment until he was about thirteen years old. By that time, he started spending less time with his father.



As an adult, Mr. Suman can recognize that his father, ███████ ███████████████████████████████████████ under enemy fire. He also served in Cambodia bringing water to villages under attack. Both of these jobs were highly dangerous and likely led to psychological scars. In 2017, his father was in a motorcycle accident. ███████████████████ He died about six months later.

His mother, Katherine, remarried his stepfather, Matthew, when Austin was about eight years old. Matthew was a teacher. His mother returned to school around that time and became a highly-skilled NICU nurse at Westchester Medical Center. Mr. Suman recalls his mother and stepfather as extremely supportive, always making sure he was engaged in after school activities. Mr. Suman speaks very highly of his stepfather and explains that although his siblings were standoffish, "I just loved him." Presentence Interview (June 5, 2025).

When Austin was about 13 or 14, his mother recalls: "Austin's personality began to change." Letter from Austin's mother, Katherine, attached at Exhibit B. She remembers that he began spending a lot of time with his older brother, "and it

---

[1] Statements from Mr. Suman during his Presentence Interview with Probation Officer Sara Willette (June 5, 2025). This sentencing letter is being filed before the initial PSR disclosure. Defense counsel will alert the Court to any objections upon receiving the draft and reviewing it with Mr. Suman.

wasn't until later that we discovered that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id*. His mother explains: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

When he returned to New York, he moved in with some roommates in Newburgh, New York. He and a roommate argued and the roommate accused him of having a gun. Mr. Suman was arrested and booked, but never charged – as the allegations were false. His booking, however, made the local news. A reporter, the victim in this case, posted the booking photo and allegations, causing her followers to make "critical comments of his booking picture calling him ugly and going on to say with a face like that he could only be a criminal and drug addict." Letter from Mr. Suman's mother, attached at Exhibit B. His mother recalls "him being in tears of embarrassment over this as he had worked very hard to get past his addiction and now everyone would assume he was using again." *Id*.

Eventually, Mr. Suman obtained a good job with UPS and stayed there for years. It required physical labor, which he loved, paid well, and had room for promotion. Indeed, he quickly became the loading dock supervisor. His mother writes: "He was very proud of this accomplishment and finally felt that his life had a direction." *Id*.

In August 2021, Mr. Suman was driving his motorcycle to work when he swerved to avoid a car. He collided with a truck and was thrown about twenty feet from his motorcycle. He incurred extensive injuries, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. So, at age 33, he was forced to move back in with his mother and stepfather, who had since retired to Myrtle Beach, South Carolina. UPS had solid short-term disability benefits, which provided Mr. Suman with two years of partial salary. At the end of the two years, he started applying for work. His mother recalls: "He googled himself and the first thing to come up was the arrest record from five years previous, posted by the victim." *Id*. She explains: "He felt hopeless because the physical handicap would impede his ability to get a job and now the incident from years ago which ended up in dropped charges was

3

still there to haunt him." Exhibit B. He began to spiral. On the night of the instant offense and in the weeks before, he was drinking too much, spending too much time online, and getting riled up by the Internet.

### C. The nature and circumstances of his conduct augur in favor of a time-served sentence.

As described above, Mr. Suman had been drinking on the night in question. He googled himself and was angry that the victim's article from so many years ago was still so readily available to potential employers. So, he made the extremely poor decision to send the victim threatening messages. Importantly, he never intended to act on these threats. Indeed, she was over 1,000 miles away. These circumstances are not intended to minimize his conduct; rather, they are offered for context only.

In his letter to the Court, Mr. Suman offers sincere remorse for his conduct. He writes that he "truly apologizes" for his "horrible message" and he "regrets the pain my actions caused her and her family." Letter to Court from Austin Suman, attached at Exhibit A. He has insight into the fact that he wrote the threats "in reaction to…anger and emotional distress." *Id*. He understands that he must find "new ways to manage [his] emotions" and "process his anger and hurt in different more productive ways." *Id*. He explains he "has never been incarcerated before" and these past eight months have been "a huge wakeup call" to the "gravity of the situation and the impact of my words and choices." *Id*.

### D. A sentence of 8 months (time served) reflects the impact of Mr. Suman's injuries on his incarceration and is commensurate with sentences imposed on similarly-situated defendants.

Mr. Suman's incarceration, his first ever, has been more punitive than most. First, his transfer from South Carolina to New York took *29 days* and required a stay at the notorious BOP Oklahoma transfer center. This "in transit" period was long and arduous. Most defendants do not have to endure such incarceration pretrial. Second, as explained above, ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████. Moreover, at Westchester County Jail, he is required to traverse stairs multiple times daily. These daily physical insults have made the past eight months more punitive than usual.

4

E. **<u>A sentence of 8 months (time served) is commensurate with sentences imposed on similarly-situated defendants.</u>**

An eight month sentence, only two months less than the 10-16 month Guidelines range, is appropriate given the outcome of other threats cases in this District.

More often than not, interstate threats cases involving a first time offender resolve by "deferred prosecution agreement," which means that the charges are dismissed if the individual complies with supervision for one year or less. For example, in *United States v. Bombaci*, 16-cr-762 (PAE), the defendant made multiple calls to a victim threatening to rape her and kill her family. The defendant also posted similar threats on social media and visited the victim's home. The case resolved in a deferred prosecution requiring mental health treatment. *See also United States v. Mota*, 23-mj-436 (S.D.N.Y. Jan. 18, 2023) (J. Reznik) (deferred prosecution after the offender threatened to "shoot up" a restaurant and commit "a massacre" of the restaurant's patrons); *United States v. Lopez,* 19 Cr. 899 (PAC) (deferred prosecution after defendant, who owned a gun, used Facebook to make death threats against a judge and defendant's former attorney after a civil case resolved unfavorably); *United States v. Waterman*, 21 Cr. 228 (ALC) (deferred prosecution a former police officer who owned several firearms for threatening to shoot "Black Lives Matter people," Andrew Cuomo, and ANTIFA protestors).

Even when threats cases resolve in a felony conviction, the defendant typically receives a sentence of time served or thereabouts. The following chart, arranged chronologically, highlights many of those cases in this District. All the defendants listed below pleaded guilty.

| Case | Facts | Sentencing |
|---|---|---|
| *United States v. Gruber*; 15-cr-00712-JPO | Defendant threatened to kill victim and born down a school. Defendant also left multiple threatening voicemails containing both homophobic and antisemitic slurs. | Time served |
| *United States v. Kelsey*; 19-cr-00115-SHS | Defendant, a Neo-Nazi with a criminal record, called and emailed multiple employees of a Jewish non-profit threatening harm if they did not remove a video criticizing Nazis. | 8 months' incarceration |

| Case | Facts | Sentencing |
|---|---|---|
| *United States v. Kudaybergenov*; 1:20-cr-00228-MKV | Defendant e-mailed his former employer numerous emails containing derogatory racial comments directed at other employees, with one email containing a threat to kill one employee. He also threatened to burn down the business after he received a "cease-and-desist" letter. | 10 months' incarceration |
| *United States v. Banfill*, 1:21-cr-00468-VM | Defendant sent a series of harassing emails over the period of year to a Fox News broadcaster. Some of the harassing emails escalated to threats to hurt/kill the broadcaster and her family. | Time served |
| *United States v. Ford*, 7:23-cr-00477-NSR | Defendant threatened journalist who reported that defendant's family member was allegedly involved in a triple homicide. Defendant said "We gonna kill you" and "We gonna shoot you right in your face" via social media direct messages. While released on pretrial, he committed two assaults and then bragged about one on social media. | 4 months' incarceration |
| *USA v. Janczuk* 1:24-cr-00010-VEC | Over a period of one year, defendant sent a series of threatening and overtly sexual emails to the victim, including emails saying "I swear that I will kill you." Defendant was also seen at victim's place of employment. | Time served |

In short, a sentence of time served (eight months) is entirely commensurate with the sentences imposed on similarly situated defendants.

### F. **Mr. Suman has a solid reentry plan that includes a strong support network, treatment, and counseling.**

Mr. Suman's family support is solid because, in large part, he has been open and honest with all of them about his criminal conduct in this case and his desire to do better. They are thrilled by this newfound openness about his emotions and his willingness to engage in treatment. He plans to move back to Myrtle Beach and work hard to find a job that can accommodate his physical disability. He also hopes to find

6

a therapy group for disabled adults.

His mother is behind this plan. She will help him obtain mental health counseling and re-enter the community smoothly. She writes: "We are there for him in any way that he needs."

## CONCLUSION

Mr. Suman is a 36-year-old man who has accepted full responsibility for his offense and feels deep shame for the harm he caused the victim and her family. He has been punished significantly for his offense. He is not only a first time felon, but he has also suffered physically while incarcerated. He is anxious for the opportunity to re-enter society, obtain mental health counseling, restart physical therapy, and get his life on track. Thankfully, his family and federal probation will be there to help him.

Sincerely,

*Rachel Martin*

Rachel S. Martin
Assistant Federal Defender
Rachel_Martin@fd.org

cc:    Reyhan Watson, AUSA

**Exhibit List**:

Exhibit A:    Letter from Austin Suman (Defendant)
Exhibit B:    Letter from Katherine Barbaro (Mother)

7