

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

July 25, 2025

**BY ECF**

The Honorable Nelson Román
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re:    **SENTENCING SUBMISSION**
            *United States v. Austin Suman,* 24 Cr. 700 (NSR)

Dear Judge Román:

    The Government respectfully submits this letter before the sentencing of Austin Suman, which is scheduled for August 1, 2025. Suman pleaded guilty to one count of threatening interstate communications, in violation of 18 U.S.C. § 875(c). For the reasons set forth below, the Government submits that a sentence of 16 months' imprisonment, within the applicable Guidelines range of 10 to 16 months, would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**I.    Offense Conduct and Procedural History**

    On November 8, 2024, Suman sent a series of violent and hate-based threats over Facebook and email to a news reporter (Victim-1) based in Orange County, New York. PSR ¶ 4.[1] Nearly six years prior, Victim-1 wrote a news article about Suman relating to his arrest for allegedly threatening a former roommate with a firearm, resulting in Suman's guns being taken away. PSR ¶ 6. Over the course of approximately 1 hour, Suman threatened to injure or kill Victim-1, writing, "I will end you," "I will end you and your family," "[I'll] see you soon," "we will end you we coming now," and "I would drag you by your legs naked with my horse."[2] PSR ¶ 5. He also threatened to blow up Victim-1's residence, writing, "I can blow your house off it's foundation tread lightly." PSR ¶ 7. He added that all his guns were returned, stating "I have more guns than ever," including "ful[ly] auto[matic]" weapons. PSR ¶ 6.

    Suman's threats were motivated by Victim-1's gender, race, ethnicity, and national origin. "[D]umb fuckin cunt . . . female journalist what a joke." PSR ¶ 5. "[D]umb Mexican," and "dum[b]

---

[1] Since a final presentence report has not been submitted at the time of this filing, citations to the "PSR" refer to the Initial Presentence Report, dated July 14, 2025, filed by United States Probation.

[2] Direct quotes attributed to Suman are included as written by him, and therefore may include typographical or grammatical errors.

fuckin Spanish journalist" he said, while repeating ethnic slurs against people of Hispanic, Latin American, or Spanish descent, repeatedly referring to the victim as a "spick." *Id.* He wrote, "We are going to deport your family all of them . . . [u]seless life. Dumb bitch." PSR ¶ 5. "Guess what I have now? More [guns] than you or your family might know. Fucking spicks." PSR ¶ 6.

On November 15, 2024, Suman was arrested in South Carolina on a criminal Complaint out of the Southern District of New York. PSR ¶ 11. The results of the search of Suman's residence confirmed that his threats were not idle talk. He had both the means and motive to carry out his threats. Federal agents recovered 11 pistols, shotguns, and rifles, including ammunition, that were in Suman's possession—most of which were in his bedroom—as well as a "Full Auto Modification Manual" (instructions to modify semi-automatic firearms into fully automatic firearms). PSR ¶ 13. One of the firearms had a *sixty-round* drum fully loaded with ammunition. *Id.* Agents also recovered a "go bag" filled with weapons and other items, showing both a plan and intention to be able to leave his residence at a moment's notice. Images of some of these items are below:

  

After Suman was arrested, law enforcement learned that Suman's threats on November 8 went beyond just Victim-1. Suman also sent threatening messages to a retired New York police sergeant who had arrested him in the past. PSR ¶ 30. He wrote: "I don't give a fuck what you are, you are retarded joke. Come to the south and bring your pathetic self and fat family. You bug eyed fuck." *Id.* He later said, "You are a faggot. You and you gay blue line. You tyrant fuckin cult. C9me south I will end you." *Id.* There were additional messages that the FBI believes were directed to the officer's minor daughter. *Id.* The retired police sergeant also informed law enforcement that, in 2011, Suman threatened to kill the officer and his whole family. *Id.*

When law enforcement reviewed Suman's phone, it recovered other messages from November 8, including messages between someone who Suman reported was a close friend in New York. PSR ¶ 12. Law enforcement spoke with that close friend, who reported that Suman has "extremist" ideology. *Id.* After Suman made his threats to Victim-1 and the retired police sergeant, Suman wrote: "Yo[] I'm ripping up [the retired police sergeant] and [the reporter] [b]itch that wrote article on me. Fuck ny. I called his daughter fat. Lol. Dumb fuckin retarded cop."

On November 18, 2024, Suman had his initial appearance in South Carolina and was detained pending transfer to the Southern District of New York. PSR ¶ 11.

On December 17, 2024, Suman was indicted by a grand jury and charged with threatening interstate communications, in violation of 18 U.S.C. § 875(c); willfully making a threat involving explosives, in violation of 18 U.S.C. § 844(e); and interstate stalking, in violation of 18 U.S.C. § 2261A(2). ECF No. 6.

On December 20, 2024, Suman had his initial appearance in this District. After a bail hearing, the Honorable Andrew E. Krause ordered the defendant detained. PSR ¶ 11.

On April 30, 2025, Suman pleaded guilty as charged in Count 1 of a three-count Indictment, pursuant to a written plea agreement (the "Plea Agreement"). PSR ¶ 1. Count 1 charges that Suman knowingly and intentionally transmitted in interstate and foreign commerce a communication containing a threat to injure the person of another, in violation of 18 U.S.C. § 875(c). PSR ¶ 1. In the Plea Agreement, the parties stipulated that the applicable Guidelines range is 10 to 16 months' imprisonment (the "Stipulated Guidelines Range").

Probation has calculated a Guidelines range of 10 to 16 months' imprisonment, based on a total offense level of 12 and a criminal history category of I, which the Government agrees is the correct calculation of the Guidelines. PSR ¶ 84.

## II. Applicable Law

The Sentencing Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Though they are advisory and not mandatory, the Sentencing Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). District courts should treat the Sentencing Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49; *see also Booker*, 543 U.S. at 264 (explaining that district courts must "consult" the Sentencing Guidelines and "take them into account" when sentencing). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)–(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, Section 3553(a) directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### III.  A Sentence of 16 Months' Imprisonment is Appropriate

The Court should sentence Suman to a term of incarceration of 16 months, which the Government submits would be sufficient, but not greater than necessary, to satisfy the purposes of sentencing. Such a sentence is needed to deter future misconduct by the defendant and others similarly situated, and reflect the nature and seriousness of his offenses. *See* 18 U.S.C. § 3553(a).

Threats create an overall "climate of violence" that must be curtailed. *United States v. Kelner*, 534 F.2d 1020, 1027 (2d Cir. 1976). Title 18, United States Code, Section 875(c) reflects Congress's "constitutional responsibility to [e]nsure domestic tranquility . . . in an era of ever-increasing acts of violence . . . coupled with technological opportunities to carry out threats." *Id.* at 1020, 1026 (2d Cir. 1976). As the late Justice Powell put it:

> One of the hallmarks of a civilized society is the level and quality of discourse. We have witnessed in recent years a disquieting deterioration in standards of taste and civility in speech. For the increasing number of persons who derive satisfaction from vocabularies dependent upon filth and obscenities, there are abundant opportunities to gratify their debased tastes. But our free society must be flexible enough to tolerate even such a debasement provided it occurs without subjecting unwilling audiences to the type of verbal nuisance committed in this case. The shock and sense of affront, and sometimes the injury to mind and spirit, can be as great from words as from some physical attacks.

*Rosenfeld v. New Jersey*, 408 U.S. 901, 909 (1972) (Powell, J., dissenting).

Suman's actions were vicious and calculated to inflict terror on the victim and her family. A sentence of 16 months' imprisonment would be appropriate for several reasons:

First, Suman's sentencing submission—particularly the letters written by him and his mother—does not come across as expressing deep remorse but rather deep justification of the hurt feelings from which his hateful threats emanated. He explains that he "googled himself and was angry that the victim's article from so many years ago was still readily available to potential employers." The reporter's post was "a thorn in my side," he states, and "the gravity of her articles have made a huge negative impact on me." Suman's mother appears to directly shift blame—if not directly attack—the victim, painting her as "an internet reporter . . . who makes her living by posting booking shots," clearly attempting to diminish the victim's integrity and history of award-winning journalism and suggesting that the victim, not the defendant, is the real wrongdoer. This is not the apology that Victim-1 deserves.

While the defendant explains that he was "angry," "upset" and "hurt" after reading Victim-1's articles," which he said "made a huge negative impact on [him] and [his] family's well-being over the years," having grievances against people is a normal part of life. That does not justify committing crimes against people. Nobody deserves to be threatened for doing their job and serving their community. This is also not the first time that he has threatened to kill someone for simply doing their job. Around the same time as his threats to Victim-1, he targeted another New York individual who he had a vendetta against—a retired police sergeant with the who has known of Suman for over 20 years. "I don't give a fuck what you are, you are retarded joke." PSR ¶ 30. Suman also sought to denigrate law enforcement, calling it a "tyrant fucking cult." *Id.* He also said "You and you gay blue line." *Id.* To friends, Suman called the officer a "[d]umb fuckin retarded cop." Rather than focus on how others have wronged him, Suman should be looking inward and reflecting on how his past mistakes brought him to where he is today. Apparently, nearly 8 months in jail has not been enough.

Second, dismissing Suman's behavior as a "drunken verbal tirade" understates the intentional and deliberate nature of his threats, as well as the context in which the threats were made. Clearly, he harbored a yearslong resentment against Victim-1 and also the retired police sergeant he threatened on that same day. His threats against Victim-1 started at 8:49 P.M. and continued off and on for an hour and over various means of communication. At 11:26 P.M., his threats against the retired police sergeant and his family started. Not only this, Suman then bragged to others about the very threats he sent these two individuals. PSR ¶ 12. Nothing about Suman's threats on November 8, 2024 were aberrational or coincidental.

Third, while it is true that Suman did not carry out his threats before he was arrested, Section 875(c) criminalizes the making—not the execution—of a threat. Threats are harmful even if they are not acted on. *See United States v. Jeffries*, 692 F.3d 473, 478 (6th Cir. 2012) ("[T]he government has the right, if not the duty, to protect individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur") (cleaned up); *United States v. White*, 670 F.3d 498, 507 (4th Cir. 2012) ("true threats have the potential to cause such harm and imperil the security of individual citizens"); *United States v. Haddad*, No. 09 CR 115, 2014 WL 1493152, at *3 (N.D. Ill. Apr. 16, 2014) ("True threats always fall outside the ambit of First Amendment protections, because they inflict injury by their very

utterance.") (internal citations and quotations omitted). And although Suman was far away from Victim-1, from her perspective, he might as well have lived across the street.

Finally, a significant sentence is particularly important here given the need for general deterrence. It is easier today than ever before to threaten people from behind the safety of the Internet. As Victim-1 is expected to recount at sentencing, Suman's threats terrorized her and her family, and caused disruption at her work at News 12 Hudson Valley. When threats are directed at core participants in our society, such as the press and law enforcement, it undermines the very functioning of our country. Such conduct must be deterred.

Suman makes several arguments in support of a sentence below the Stipulated Guidelines Range. None of them justify a downward variance.

First, he references the amount of time it took to get him transported from South Carolina to New York. But the amount of time it took to transport him was reasonable and in line with usual procedures. He should not get a discount because he threatened his victim from South Carolina. Suman also cites physical injuries stemming from a motorcycle accident in 2021. However, federal correctional facilities are more than capable of accommodating defendants with physical injuries or disabilities. And although Suman refers to his condition as a "disability," he has provided no medical records supporting that claim, and he acknowledges that his disability benefits claim was denied (though he says he is appealing the denial). PSR ¶ 71. Throughout this case, the Government has not heard a single complaint about the quality of medical care the defendant is receiving.

Second, Suman next argues that a more lenient sentence would be commensurate with sentences imposed on similarly situated defendants. But that is not true. To start, Suman's reliance on cases involving deferred prosecutions is not on point because, clearly, the Government has not deferred prosecution in this case. To the extent Suman presents a selection of other cases in support of a time served sentence,[3] the Government submits that the Sentencing Guidelines, which reflect "extensive empirical evidence derived from the review of thousands of individual sentencing decisions," is a sounder proxy for what sentence is typical in these types of cases. *Gall*, 552 U.S.

---

[3] One of those cases is *United States v. Kareem Ford*, 23 Cr. 477 (NSR), which was a case before Your Honor that happened to involve the same victim as in this case. Ford, who was 21-years-old at the time of his threats, received a sentence of 4 months' imprisonment, even though both parties requested a time-served sentence. Ford's sentence was slightly higher than the middle of the 0 to 6 months' Guidelines range stipulated to by the parties. *See id.*, ECF No. 36 (Government Sentencing Submission). Unlike Suman's threats, Ford's case did not involve multiple graphic, racist, misogynist, and hate-filled threats through multiple forms of communication against not just the reporter but also her family. Ford also immediately acknowledged responsibility for his threats when interviewed by the FBI, as opposed to lying to law enforcement. Moreover, rather than deflect blame and seek to justify his actions, Ford was remorseful and provided a direct apology to the victim: "If I could speak to the reporter I would apologize and deeply tell her my regrets and tell her I am harmless and was being young and dumb. I meant no harm and had no intentions on any words I said. It was just wrong what I did, and stupid." *Id.*, ECF No. 35 (Ford's Sentencing Submission).

at 46. Even still, the defendant's own cases support a lengthy sentence here, as the "timed served" sentences involved effective sentences of 19 months, 21 months, and 22 months.[4]

## IV.   Conclusion

Given the need for Suman's sentence to afford adequate deterrence to him and others similarly situated, reflect the nature and seriousness of his offense, and promote respect for the law, the Government submits that a Guidelines sentence of 16 months' imprisonment would be sufficient, but not greater than necessary, to satisfy the purposes of sentencing. *See* 18 U.S.C. § 3553(a).

Respectfully submitted,

JAY CLAYTON
United States Attorney
for the Southern District of New York

By: _____
Reyhan Watson
Assistant United States Attorney
(914) 993-1965
Reyhan.Watson@usdoj.gov

cc:   Rachel Martin, Esq. (By ECF and Email)

---

[4] In *United States v. Gruber*, No. 15 Cr. 712 (JPO) (S.D.N.Y.), the defendant's "time served" sentence was effectively 19 months' incarceration, resulting in "[n]ot a lot of difference" between a Guidelines sentence and a time served sentence. *Id.*, ECF No. 65 at 14 (Sentencing Transcript). In *United States v. Banfill*, No. 21 Cr. 468 (VM) (S.D.N.Y.), the defendant's "time served" sentence was effectively 21 months' imprisonment. *See id.*, ECF No. 44 (Defendant's Sentencing Submission). And in *United States v. Janczuk*, No. 24 Cr. 10 (VEC) (S.D.N.Y.), the Court sentenced the defendant to "time served" but, by the time of the Government's sentencing submission, the defendant had already spent over 22 months incarcerated. *Id.*, ECF No. 47 at 4 n.1. Additionally, Janczuk's Guidelines range was 0 to 6 months. *Id.* at 3.